UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 5:25-CR-00079-01** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LEON WILLIAMS (01)** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss Count 1 of the Indictment [Doc. No. 22] filed by Defendant Leon Williams ("Williams"). An Opposition [Doc. No. 24] was filed by the United States (the "Government"). Williams did not file a Reply.

For the reasons set forth below, Williams' Motion is **DENIED**.

### I. BACKGROUND

On July 22, 2024, Williams was arrested for possessing firearms and unlawful handling of a machinegun.[1] On April 2, 2025, a federal grand jury returned a two-count indictment charging Williams with Possession of a Firearm by a Convicted Felon (Count 1) and Illegal Possession of a Machine Gun (Count 2).[2] Prior to the instant arrest, Williams had the following felony convictions: (1) in 2017, Unauthorized Use of a Motor Vehicle, Simple Burglary, Attempted Simple Burglary – 6 years hard labor, suspended, 3 years active probation, each count, (2) in 2017, Possession of Schedule II, Cocaine – 3 years, (3) 2019, Possession of a Firearm by a Convicted Felon and Illegal Possession of Stolen Firearms – 6 years, each count, and (4) in 2022, Obscenity – 3 years hard labor.

---

[1] [Doc. No. 1].
[2] [Id.].

Williams filed the pending Motion seeking to dismiss Count One of the Indictment on May 28, 2025.[3] In essence, Williams claims that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him and must be dismissed unless the Government demonstrates that the Nation of the United States has a longstanding tradition of disarming someone with a criminal history analogous to him.[4] The Government opposes the Motion and alleges that Williams is the type of "dangerous" person the Second Amendment excludes and applying § 922(g)(1) to Williams is squarely consistent with this Nation's historical tradition of firearm regulation.[5]

The issues have been briefed and the Court is prepared to rule.

II. **LAW & ANALYSIS**

  A. **Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. (12)(b)(1). Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense." *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)) (cleaned up). A court may resolve such defects before trial when the motion presents a question of law. *See United States v. Fontenot,* 665 F.3d 640, 644 (5th Cir. 2011). The central issue here falls squarely within that ambit—whether § 922(g)(1) is unconstitutional as applied to Williams.

  B. **Williams' Motion**

Williams claims that he is protected by the Second Amendment, and § 922(g)(1) infringes upon his fundamental right to possess and use a firearm for personal protection and defense.[6] The

---

[3] [Doc. No. 22].
[4] [Id., p. 1]
[5] [Doc. No. 24, p. 8].
[6] [Doc. No. 22].

statute prohibits any person who has been convicted of a felony to ship, transport, possess, or receive firearms or ammunition via interstate or foreign commerce. 18 U.S.C. § 922(g)(1). Williams points to *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which illustrates the framework lower courts must apply to "as-applied" challenges to charges brought under § 922(g)(1).[7] Thus, Williams argues that the statute is unconstitutional, as applied, unless the Government satisfies its burden of demonstrating that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to him.[8]

### C. The Second Amendment

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a Free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, the Supreme Court read this language to "protect the right of law-abiding, responsible citizens to use arms in defense of heath and home." 554 U.S. 570, 635 (2008).[9] However, the Court made clear that the right is not unlimited. *Id*. at 626.

The Court established a two-step framework for Second Amendment constitutional challenges in *Bruen*. 597 U.S. at 19-24. First, courts must consider whether "the Second Amendment's plain text covers an individual's conduct." *Id*. at 24. If so, "the Constitution presumptively protects that conduct," and the Government must bear the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm

---

[7] [Id.].
[8] [Id.].
[9] Indeed, the right the Second Amendment sought to protect likely existed far before the ratification of the Bill of the Rights. Several provisions in the Bill of Rights were "understood as declaratory, inserted simply out of an abundance of caution to clarify pre-existing constitutional understandings." Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 28 (1998).

regulation." *Id*.[10] However, the Government must only point to a "well-established and representative historical analogue, not a historical twin." *Id*. at 30. In assessing similarity, courts should look to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id*. at 29.

### D. The Constitutionality of § 922(g)(1) as Applied to Williams

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear that felons are among "the people" protected by the Second Amendment. *Diaz*, 116 F. 4th at 466-467. Thus, the first part of the analysis stops there.

Next, the Court must consider whether any historical examples "impose a comparable burden on the right of armed self-defense" during the Second Amendment's ratification. *Bruen*, 597 U.S. at 27. Among others felony convictions, Williams' pertinent criminal history includes possession of a schedule II-controlled substance, possession of a firearm by a convicted felon, simple burglary and attempted simple burglary, and illegal possession of stolen firearms.[11] Thus, the Government must show that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" Williams. *Diaz*, 116 F. 4th at 467. Importantly, the historical examples discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals that may pose a risk of violence or otherwise threaten public safety. *See id.* at 469.[12]

---

[10] The purpose of the two-step framework is straightforward: the Court sought to expressly reject any "judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Bruen*, 597 U.S. at 22 (cleaned up); *cf. Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1261 (11th Cir. 2022) (Newsom, J., concurring) ("[U]nelected, unaccountable federal judges shouldn't make stuff up.").
[11] [Doc. No. 53, p. 2].
[12] The Fifth Circuit in *Diaz* made at least three distinct and relevant points. First, the Fifth Circuit explained that historical laws which authorized capital punishment and estate forfeiture following felony convictions were "justified by the need to adequately punish felons, deter reoffending, and protect society from those proven untrustworthy to follow the law." *Diaz*, 116 F. 4th at 469. Second, state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id*. Finally, the *Diaz* court considered the Supreme Court's finding in *Rahimi* that "going armed punished those who had menaced others with firearms because such actions disrupted the public order and led almost necessarily to actual violence." *Id*. at 470 (cleaned up).

In other words, the analogs demonstrate a "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700.

Here, Williams' prior burglary, possession of illegal firearms, and drug-related felonies establishes the requisite nexus to public safety. And the Government has sufficiently carried its burden under *Bruen* to show a longstanding tradition of regulating someone with a criminal history analogous to Williams.

First, the Government compares Williams' drug possession felony convictions to Founding-era laws, which criminalized receipt, possession, and the trafficking of illicit contraband and subsequently permitted the dispossession of firearms.[13] For instance, the Government explains that Virginia historically allowed the death penalty for the crime of knowingly receiving a stolen horse,[14] that the Second Congress authorized capital punishment for the theft of mail,[15] and that several states permitted a similar punishment for the counterfeiting and forgery of public securities.[16] In other words, if a death sentence was permissible to respond to possessing contraband, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Wilson*, 2024 WL 4436637 at *4 (citing *Diaz*, 116 F.4th at 469). The Government also points to founding era laws that applied to crimes such as robbery and burglary.[17] Thus, the Founding-era laws cited by the Government sufficiently qualify as "relevant evidence" that shows

---

[13] [Doc. No. 24, pp. 6-11].
[14] [Id. at p. 11]; 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819).
[15] [Id.]; *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792).
[16] [Id.]; *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790).
[17] *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024) (observing that "early legislatures … authorized punishments that subsumed disarmament—death or forfeiture of a perpetrator's entire estate—for nonviolent offenses involving deceit and wrongful taking of property." (collecting statutes and scholarship)); Beth A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 & nn.275–76 (2014) (collecting statutes)

our country has a historical tradition of severely punishing people like Williams who have been convicted of possessing contraband and committing burglary. *Diaz*, 116 F.4th at 469.

Next, the fact that the Government did not point to Founding-era laws prohibiting drug possession is not dispositive. *Wilson*, 2024 WL 4436637 at *4. Again, the Government only needs to find a "historical analogue, not a historical twin." *Bruen*, 597 U.S. at 30. And it has done so. Moreover, Williams clearly falls into the category of those who "present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. Congress has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993).[18] Thus, the Second Amendment does not preclude the enforcement of § 922(g)(1) to Williams.

Finally, this Court is not alone in holding § 922(g)(1) constitutional as applied to defendants with prior convictions resembling Williams' criminal history. *See, e.g., United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding § 922(g)(1) constitutional as applied to a defendant with prior drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (same); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (same); *United States v. Landrum*, No. 3:24-CR-63-DPJ-LGI, 2024 WL 4806486, at 1 (S.D. Miss. Nov. 15, 2024) (same); *United States v. Patino*, No. 24-CR-60-DC, 2024 WL 5010146, at *7 (W.D. Tex. Nov. 26, 2024) (same). Nor is the list of examples exhaustive. Those courts reason, as the Court does here, that guns and drugs are a dangerous combination that raises

---

[18] Federal appellate courts have largely agreed that drug dealing is "notoriously linked to violence." *United States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011); *see also, e.g.*, *United States v. Barton*, 633 F.3d 168, 174 (3d. Cir. 2011)" [O]ffenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business.").

the risk of violence, and Congress has traditionally addressed that risk by dispossessing long-time drug offenders of firearms. *Wilson*, 2024 WL 4436637 at *5.

Therefore, Williams as-applied challenge fails because the Government has met its burden to show that applying § 922(g)(1) to Williams is consistent with the principles that underpin our Nation's tradition of firearm regulation.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Williams' Motion [Doc. No. 22] is **DENIED**.

MONROE, LOUISIANA, this 17th day of June, 2025.

Terry A. Doughty
United States District Judge